UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
HUNTER'S MOON FARM, LLC,
        Plaintiff

    v.

FRANK MADDEN SHOW STABLE, LLC
and FRANK I. MADDEN,
        Defendants
---------------------------------------------------------------x

Case No. 11 Civ. 4221

### Declaration of Frank I. Madden

I, Frank I. Madden, hereby declare:

I am the individual defendant and the manager of Frank Madden Show Stable, LLC ("FMSS"). I make this Declaration in opposition to the request for temporary restraints seeking to stop me from providing any equestrian services, such as training, boarding or coaching, on Long Island indefinitely, or as Plaintiff puts it, during the pendency of this action.

    2. I have resided at 190 June Rd., North Salem, New York, since April 15, 2011. On that date, I commenced my affiliation with Old Salem Farm, located at that address.

    3. It should be noted that I am not a party individually to the Equine Facility and Services Agreement ("Agreement") attached as Exhibit B to the Griffin Declaration. The only parties to that Agreement are Hunter's Moon Farm, LLC ("HMF") and Frank Madden Show Stable, LLC ("FMMS"). I am not party to any contract with HMF. The statement that "HMF, FMSS and Madden entered into" the Agreement, in Plaintiff's Brief at page 2, is false. It is also unfair and inaccurate to say that FMSS and I are "one and the same", since FMSS is a limited liability company which Plaintiff clearly understood was becoming a party to the Agreement, and not me individually. Throughout Plaintiff's Brief there are efforts to conflate FMSS and me, none of which are proper.

    4. It should also be noted that the Exclusivity provision on which Plaintiff relies in its effort to restrain me personally from engaging in business on Long Island, section 10.4 of the Agreement, contains a covenant by FMMS only, and not by me personally.

    5. Moreover, the Exclusivity provision actually allows FMMS to perform training

and related services in connection with competitions and clinics that take place outside of HMF's barn (defined as the "Facility"). The relief requested by Plaintiff is actually more restrictive than the terms of the Agreement, since it prohibit FMMS (and me, even though I never agreed to be bound personally by the Agreement) from doing things that are not prohibited by the Agreement, namely performing training and coaching at equestrian competitions that take place outside of HMF's barn. For example, I plan to train my students at the competitions scheduled for the Hamptons at the end of the summer, which would be permitted by the Agreement if it were still in force and binding on me (as the Hamptons show constitutes a competition that takes place outside the Plaintiff's facility). However, if the Court grants the relief requested I would be barred from doing that.

      6. Under the Agreement, HMF was responsible for billing for FMMS' services, performed by myself and other FMMS employees or contractors, and collecting all the revenue from those services. Pursuant to Section 6 of the Agreement, HMF was supposed to pay FMMS its share of Collected Revenues by the 15th day of the month following the month in which such revenues were collected. On March 8, 2011, FMMS' attorney sent HMF a letter, attached as Exhibit A, notifying HMF that it was in default for not having made the payments to FMMS required by the Agreement for almost 3 months. On March 11, 2011, HMF's lawyer at the time responded, see Exhibit B, asking for data and representing that HMF was "ready and willing" to provide the accountings and payment called for by the Agreement. On March 21, 2011, my lawyer responded with answers to HMF's requests for information (see Exhibit C). By April 13, 2011, when FMMS had still not received either payment of amounts due, or an accounting, my counsel wrote a letter terminating the Agreement (Exhibit F to Griffin Dec.), which is permitted if a default under the Agreement is not cured within 30 days after notice according to section 23.1. Even though Plaintiff has known I was working at Old Salem farm for over 2 months, it only filed this suit after I called looking for payment of the balance due FMSS under the Agreement.

There are numerous other misrepresentations and half-truths in the Plaintiff's
Brief, including the following:
At page 3, HMF alleges by way of the Agreement, HMF "secured the exclusive services of Madden.." That is false, since nowhere did I agree to personally work exclusively for HMF, and I certainly did not agree to limit where I could work or what I could do after the Agreement was terminated.
The contention at page 5 that the purpose of the proviso in the Exclusivity section was so I could coach HMF riders when they compete outside the facility is not supported by the language of the Agreement, and was not the intention. FMSS was permitted to coach anyone who hired FMSS at competitions outside the HMF Facility, not just HMF riders, so long as all the billing for those services were passed through HMF and it got its percentage share of those billings.
Throughout the Brief, HMF refers to me as its "employee") (see pp. 8-10). I have never

had an employment relationship with HMF. In addition, the Agreement states clearly that FMSS and HMF are entering into the Agreement as independent contractors (see 10.2, 11.2)

The claims for breach of fiduciary duty against me seem to be based on my alleged status as an employee of HMF (see Brief at 19-20). Not only was I never an HMF employee, I have never entered into a contract with HMF.

I declare under penalty of perjury that the foregoing is true and correct.

Frank I. Madden

Lake Placid, New York
June 27, 2011

# EXHIBIT A

Case 1:11-cv-04221-LTS   Document 5   Filed 06/29/11   Page 4 of 18

March 8, 2011

**VIA FEDEX**
Hunter's Moon Farm, LLC
30 E. 76th St., 4th Floor
New York, New York 10021

Re: Frank Madden Show Stable, LLC v. Hunter's Moon Farm, LLC

Dear Sir or Madam:

    This firm represents Frank Madden Show Stable, LLC ("FMMS"). Hunter's Moon Farm, LLC, is in default under the Equine Facility and Services Agreement, between FMMS and Hunter's Moon Farm, LLC dated March 21, 2008 (the "Agreement").

    Pursuant to paragraph 6 of the Agreement, FMMS is to be paid on a monthly basis for amounts earned during the prior month. FMMS has not been paid amounts due to it since December 2010. In addition, FMMS has not received the itemized statement of amounts due it as required by section 6 of the Agreement.

    You have thirty (30) days to make the requisite payments and provide the accounting called for by the Agreement. Failure to do so will result in termination of the Agreement and FMMS shall thereafter enforce its remedies without further notice to you. Please be guided accordingly.

Very truly yours,


PAUL R. DEFILIPPO

PRD/lad

cc: Rachel E. Kosmal McCart, Esquire
    Equine Legal Solutions, PC
    24150 S. Highland Crest Drive
    Beavercreek, Oregon 97004

# **EXHIBIT B**



24150 S. Highland Crest Dr.
Beavercreek, OR 97004
T 866/385-2972
F 503/343.9680
www.equinelegalsolutions.com

# facsimile

Date: March 11, 2011

To: Paul R. DeFilippo, Esq./Wolmuth Maher & Deutsch LLP
(212) 382-0050

CC:

Total Pages: 8

Message:

150 S. Highland Crest Dr.
Silvercreek, OR 97004
equinelegalsolutions.com

Tel. 866/385.2972
Licensed in: OR, CA, NY & WA



VIA FACSIMILE AND U.S. MAIL

March 11, 2011

Paul R. DeFilippo, Esq.
Wolmuth Maher & Deutsch LLP
500 Fifth Ave.
New York, NY 10110

Re: *Hunter's Moon Farm, LLC v. Frank Madden and Frank Madden Show Stable, LLC*

Dear Mr. DeFilippo:

My client received your letter dated as of March 8, 2011, in which you allege that my client is in breach of Section 6 of the Equine Facility and Services Agreement (the "Contract"). Please be advised that I represent Hunter's Moon Farm, LLC in all matters pertaining to the Contract. Accordingly, please direct all further correspondence regarding such matters to the undersigned.

As you know, our respective clients were involved in settlement discussions immediately prior to your appearance in this matter. These discussions included your clients' breach of their obligation to provide my client with itemized charge information pursuant to Section 5.2 of the Contract, including the data itemized in Attachment A. I met and conferred with your clients' previous counsel regarding this breach and understood that your clients were prepared to cure by providing the data in Attachment A. However, as of today, my client has not received such data, except for incomplete data provided with respect to Item 4, which my client just received today (copy attached).

My client stands ready and willing to provide accountings and distributions to your clients pursuant to the Contract. However, without the data in Attachment A, my client has been unable to prepare an accurate accounting and distribution. As soon as your clients provide the data in Attachment A, my client will promptly prepare an accounting and distribution.

Sincerely,

*Rachel E. Kosmal McCart*
Rachel E. Kosmal McCart
Sr. Counsel



## Attachment A

1. Collections for the attached billings to Gabrielle Bausano Inc.
2. Collections for the attached billings to Prakash and Anjali Melwani.
3. Purchase commission for the horse named "Unique" purchased by Stateside Farm LLC (and/or related parties) on or about February 2011.
4. Lessons and all other billing items for Stateside Farm LLC (and/or related parties) for January and February 2011.
5. Hunter's Moon Farm provided Mr. Madden with a $20,000 housing advance on or about October 2010, with the express understanding that as had been the parties' practice in previous winter seasons, the housing advance would be billed to customers and Hunter's Moon would thereby be reimbursed in full. To date, Mr. Madden has provided Hunter's Moon with billing information for $15,000 of such advance, but not for the remaining $5,000.
6. All other previously unbilled sale, purchase and lease commissions.

December 20, 2010

Frank Madden
c/o Hunter's Moon Farm LLC
3100 Aachen Lane
Wellington, FL 33414

Dear Frank,

Enclosed please find our check # 2252 in the amount of $ 91,734.98, calculated as follows:

1. FMSS distribution for October 2010   $ 59,662.06
2. FMSS distribution for November 2010   18,749.31
3. Adjustment for April-Sept 2010   13,323.61
    (per contract clause # 6(ii), your
    percentage increased from 70% to
    75%)
Net Amount Enclosed:           $ 91,734.98

You requested that we continue to do FMSS billing through the end of March. As we informed your attorney, we will do so except for the Bausano and Melwani accounts. This is for liability purposes, as we do not want these parties to perceive, were they to receive your training bills on HMF letterhead, that we are still in any way involved with the care of their horses.

For your convenience, and to ensure continuity of billing, we have prepared bills for the Bausano and Melwani accounts (at a prorated amount of $6440 per horse for the season from December 11 on), and recommend that you distribute them, and make the appropriate collections. We also attach a bill for our 25% share of these amounts; please remit when you have collected the above sums for the Melwani and Bausano accounts.

As we have not yet completed our collections for December, we hope to issue your December distribution in the second week of January.

Best regards for the holiday season.

Pearl Seril

**FRANK MADDEN SHOW STABLE**
C/O 3100 Aachen Lane
Wellington, FL 33414

January 1, 2011

Gabrielle Bausano Inc.
139 East 79th Street Apt. 6
New York, N.Y. 10075

---

FMSS Training Package @7000/horse
(pro-rata from December 11, 2010—April 3, 2011

| | |
|---|---|
| Champ | $ 6440.00 |
| Naf-Naf | 6440.00 |
| Thiago | 6440.00 |
| Ubico | 6440.00 |

Total……………………………………………………………$25,760.00

Please make payments payable to "Frank Madden Show Stable"

**FRANK MADDEN SHOW STABLE**
C/O 3100 Aachen Lane
Wellington, FL 33414


January 1, 2011


Prakash and Anjali Melwani
1030 Fifth Avenue
New York, N.Y. 10028

---

FMSS Training Package @7000/horse
(pro-rata from December 11, 2010—April 3, 2011

| | |
|---|---|
| Carnito | $ 6440.00 |
| Quintelli | 6440.00 |

Total..................................................................$12,880.00


Please make payments payable to "Frank Madden Show Stable"

**Hunter's Moon Farm, LLC**
30 East 76th Street 4th Floor
New York, N.Y. 10021

January 1, 2011

Frank Madden Show Stable
c/o 3100 Aachen Lane
Wellington, FL 33414

Re: Bausano/Melwani Training Packages

FMSS Training Package @7000/horse
(pro-rata from December 11, 2010—April 3, 2011)

<u>Bausano</u>
| | | |
|---|---|---|
| Champ | $ 6440.00 | |
| Naf-Naf | 6440.00 | |
| Thiago | 6440.00 | |
| Ubico | 6440.00 | |
| Total | | $25,760.00 |

<u>Melwani</u>
| | | |
|---|---|---|
| Carnito | $ 6440.00 | |
| Quintelli | 6440.00 | |
| Total | | $12,880.00 |

Total Training                                         $ 38,640.00

HMF 25% percentage per contract                        x .25

Amount payable to HMF                                  $ 9,660.00

Thank you for your remittance.

WEF 2011
Jennifer Goddard

**WEF 1-Jan 12-16**

    Angelina--High Schooling
        High Schooling

    Wynnie--Low Schooling
        Low Schooling

*This might have been billed?*

**WEF 2 Jan 19-23**

    Angelina--1.40
        1.40

**WEF 4 Feb 2-6**

    Angelina--1.40
        1.45

    Unique--1.30
        1.35

**WEF 5 Feb 9-13**

    Angelina--1.40
        Young Rider Gp

    Unique—1.35
        1.35

**WEF 6 Feb 16-20**

    Unique—1.35
        1.35

**WEF 7 Feb 22-27**

    Angelina-1.40
        Young Riders GP

# EXHIBIT C

## WOLLMUTH MAHER & DEUTSCH LLP

500 FIFTH AVENUE

NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

March 21, 2011

Rachel E. Kosmal McCart, Esquire
Equine Legal Solutions, PC
24150 S. Highland Crest Drive
Beavercreek, Oregon 97004

Re: Frank Madden Show Stables, LLC v. Hunter's Moon Farm, LLC

Dear Ms. McCart:

I am in receipt of your letter dated March 11, 2011. The responses to the items set forth on Attachment A to your letter are as follows.

> 1. and 2.  FMMS agrees that it owes the $9600.00 which is the subject of your client's invoice to FMMS dated January 1, 2011. FMMS authorizes Hunter's Moon Farm, LLC ("HMF") to offset that amount from monies that HMF owes him.
>
> 3.  I am informed that FMMS and Frank Madden did not participate in the purchase or sale of the horse "Unique". Accordingly they did not bill for a commission on the transaction since none was due. Therefore no money is due to your client as a result of that transaction.
>
> 4. FMMS advises that these items were previously sent to Hunter's Moon Farm, LLC.
>
> 5. FMMS agrees that HMF may offset $5,000 from amounts due to FMMS for periods after the date of the last payment to him by HMF.
>
> 6. FMMS advises that it is current on all billings for purchase, sale and lease commissions.

In accordance with your letter of March 11, 2011, please provide an accounting and payment pursuant to the Contract. This letter is without prejudice to all of "FMMS" rights and remedies.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

PAUL R. DEFILIPPO

PRD/lad